IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

HOLLY A. GLEASON,

                                    Plaintiff,

            vs.                                    Civil Action No.
                                                   5:06-CV-1161 (DEP)

MICHAEL K. ASTRUE, Commissioner
of Social Security,[1]

                                    Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

HINMAN, HOWARD LAW FIRM              EUGENE FAUGHNAN, ESQ,
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

FOR DEFENDANT:

HON. GLENN T. SUDDABY               KAREN FISZER, ESQ.
U.S. Attorney's Office              Special Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

_____

[1]      Plaintiff's complaint, which was filed on September 28, 2006, named Jo
Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  See 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL     BARBARA L. SPIVAK, ESQ.
Social Security Administration     Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Plaintiff Holly A. Gleason, who suffers the affects of multiple health conditions including, principally, degenerative disc disease and arthritis, has commenced this proceeding to challenge an administrative determination that she is not disabled, within the meaning of the Social Security Act, resulting in the denial of her application for disability insurance and supplemental security income ("SSI") benefits.  In support of that challenge plaintiff maintains that the agency's finding of no disability resulted from the improper rejection of contrary opinions of her treating physician, and of her subjective testimony regarding the limitations which she experiences, and additionally that the Commissioner failed to carry his burden of establishing the availability of work which she is capable of performing despite her limitations.  In light of these deficiencies, plaintiff seeks a reversal of the Commissioner's determination and a remand of the matter to the agency with a directed finding of disability, for the limited purpose of calculating the benefits owed

2

to her.

Having carefully reviewed the record which was before the agency, considered in light of plaintiff's arguments, I find the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence in the record, and therefore I find no basis to set aside the Commissioner's determination.

I.      BACKGROUND

The plaintiff was born on June 21, 1959; at the time of the administrative hearing in this matter, she was forty-six years old. Administrative Transcript at pp.52, 291.[2]  Plaintiff is married, and has two adult children.  AT 52, 306-07.  Plaintiff lives with her husband in Marathon, New York.  AT 54, 307.

Plaintiff is a high school graduate, and has been employed in several settings, including as a wire tipper, a typewriter inspector, and a cleaner.[3]  AT 60, 79, 98, 291-94.  Plaintiff last worked in September of

---

[2]      Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 3, filed by the Commissioner together with his answer, will be cited hereinafter as "AT ___."

[3]      In addition to graduating from high school, plaintiff underwent considerable educational training to become a nurse's aide, leading to the issuance in 1978 of a certificate authorizing her to practice in that field.  AT 291-92.  Despite that training, however, plaintiff never worked as a nurse's aide.  *Id.*

2003 for the Marathon Central School District, where she was employed as a cleaner.  AT 52, 292; *see also* AT 57.  In that position, plaintiff was required to move furniture, including filing cabinets and desks, often weighing as much as fifty pounds, and worked mostly from a standing position.  AT 293.

Plaintiff suffers from a neck and back condition which, over time, has caused her to experience pain in various parts of her body.  Plaintiff's neck condition led her to undergo surgery in October of 1998 to repair a herniated cervical disc at the left C6-7 level, entailing a fusion utilizing bone material harvested from her left iliac crest.  AT 106-08.

While plaintiff returned to work following her surgery, she experienced two falls in April and September of 2003, causing aggravation of her neck condition.  AT 308-09.  Plaintiff reports experiencing ongoing neck pain, described as being sometimes sharp, but at other times dull, making it difficult to move her head back and forth, and continuing both down her spine to her lower back and into her left arm and shoulder.  AT 295.  Plaintiff states that as a result of her condition she also experiences numbness in her hands, although she notes that the problem with her hands developed only over the month prior to the hearing in this matter. AT 295-96.

4

Aside from her neck operation in 1998, plaintiff has chosen a relatively conservative course of treatment for her neck and back condition.  While plaintiff has in the past engaged in physical therapy and attempted utilization of a TENS unit, without success, *see* AT 301-03, she has not been hospitalized other than for her surgery, and has treated only relatively sporadically with her physicians, including Dr. Barry J. Pollack, a neurosurgeon.  *See* AT 135 -83.  Plaintiff has been prescribed and taken various medication for her pain, including Relafen, which was reported to have provided her with some relief, AT 113; Robaxin, found to at least partially control her back spasms, AT 137A; Elavil, or Amitryptiline, which, it was noted, helped her to sleep better, AT 141, 162 ; and Methocarbamol, AT 298.  While plaintiff claims to experience significant side affects from her medication, including dizziness and fatigue, *see* AT 298, medical reports in the record, including principally from Dr. Pollack, fail to substantiate those claims, and indeed in May of 2005 plaintiff stated that she was taking medication, but denied experiencing headaches, dizziness, nausea, chest pain, shortness of breath, or dyspnea on exertion.  AT 200.

In addition to her back and neck conditions, plaintiff claims to suffer from other medical impairments including high blood pressure,

headaches, hypertension, light headedness, dizziness and carpal tunnel syndrome.  There is little if any evidence in the record, however, to connect those impairments with any conditions which would present limitations to plaintiff's ability to perform work-related activities.

There are also indications in some of Dr. Pollack's reports regarding the plaintiff that she suffers from fibromyalgia.  *See* AT 136-41.  In a handwritten note, which appears to be dated January 19, 2004, Dr. Pollack notes that in addition to suffering from chronic lumbar arthritis, plaintiff appears to be "developing secondary fibromyalgia as a result of . . . [her arthritis]."  AT 135.  Dr. Pollack also makes passing reference to tenderness and the prospect of fibromyalgia in subsequent office notes, including on June 2, 2004 ("The patient remains with fibromyalgia and post-traumatic cervical and lumbar arthritis."), AT 136; July 14, 2004 ("I believe the patient is suffering from a flare-up of her post-traumatic arthritis and discogenic pain and worsening of her fibromyalgia."),  AT 137; September 8, 2004 ("Ms. Gleason has fibromyalgia developing as a complication of the injury she suffered when she lifted a sofa at work as a custodian at Marathon Central High School on April 30, 1998."), AT 138; October 6, 2004 ("Ms. Gleason remains with fibromyalgia"), AT 139; November 17, 2004 ("Ms. Gleason is suffering from fibromyalgia as a

6

result of her lifting injury of October 30, 1998."), AT 140; December 15, 2004 ("Ms. Gleason remains with fibromyalgia and some arthritic low back pain aggravated by the cold weather"), AT 141. More recent reports from Dr. Pollack, however, refer to plaintiff's condition as arthritis. *See*, *e.g.*, AT 151, 153.  It does not appear that plaintiff is now pressing that condition as a basis for finding disability.[4]

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

    Plaintiff protectively filed applications for disability insurance and SSI Social Security benefits on December 19, 2003 and January 7, 2004, respectively, both alleging a disability onset date of September 6, 2003. AT 52-54; *see also* AT 12.  Those applications were denied on June 3, 2004.  AT 12, 31-45.

    At plaintiff's request, a hearing was held on April 6, 2006, by video conference, before Administrative Law Judge ("ALJ") Melvin D. Benitz.[5]

---

    [4]   Although Dr. Pollack's report of a February 15, 2006 follow-up visit reveals his recommendation that the plaintiff be seen by a rheumotologist to address her problems and "to see if there is any medical care that would improve her work related conditions", there is no evidence that the plaintiff carried through with this suggestion.  *See* AT 149.

    [5]   Plaintiff's hearing was actually commenced on September 23, 2005, but was promptly adjourned on that date in order to afford her opportunity to retain counsel to represent her at the proceeding.  AT 281.

*See* AT 288-317.  Testifying at the hearing were the plaintiff, who was represented by counsel, and Jan Howard Reed, a vocational expert engaged by the agency to offer expert opinions regarding plaintiff's ability to perform available work.  *Id.*

Following the hearing, ALJ Benitz issued a written decision dated May 9, 2006, addressing plaintiff's claim for social security benefits.  AT 12-20.  Employing the now-familiar five step algorythm for determining disability, and conducting a *de novo* review of the record, the ALJ first determined that Ms. Gleason had not engaged in substantial activity at any time relevant to her benefits application.  AT 14.  Reviewing the available medical evidence regarding plaintiff's circumstances, ALJ Benitz next determined that plaintiff suffers from impairments, including degenerative disc disease and arthritis, of sufficient severity as to impair her ability to perform basic work-related functions and thus sufficient to satisfy step two of the relevant test, but concluded that those impairments do not either meet or medically equal any of the listed, presumptively disabling impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, including specifically Listings 1.02, relating to major joint dysfunctions, and

1.04, addressing spinal disorders.[6]  AT 14-16.   Before addressing

plaintiff's ability to perform her past relevant work, ALJ Benitz next

determined that notwithstanding her medical conditions, she retains the

residual functional capacity ("RFC") to perform sedentary work, provided

that she is allowed to sit or stand at intervals of fifteen to twenty minutes,

and with no prolonged climbing, balancing, or stooping, and with the

additional conditions that she avoid heights, hazardous machinery,

overhead reaching, extreme temperatures, and humidity, and that she be

required to engage in only moderately limited gripping and pushing or

pulling with upper extremities and with somewhat limited lower extremities,

and further that she be required to only occasionally lift ten pounds and

frequently five pounds.[7]  AT 16.  In arriving at his RFC finding, the ALJ

---

[6]    Plaintiff does not argue that her disability meets or equals any of the listed criteria.

[7]    Sedentary work is defined by regulation as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

determined that plaintiff's complaints of pain, numbness, and difficulties with driving because of her medication, which reportedly makes her sleepy, were not entirely credible despite his findings of the existence of a medically determinable impairment which could reasonably be expected to produce such alleged symptoms.  AT 16-17.  Based upon his RFC finding, and guided by testimony provided by a vocational expert regarding the physical demands associated with those positions, the ALJ concluded that plaintiff is unable to return to any of her past relevant work.  AT 18.

Proceeding to step five of the disability analysis, and acknowledging the shifting of burdens to the Commissioner, the ALJ first resorted to review of the medical vocational guidelines set forth in the governing regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, determining based upon his RFC finding and plaintiff's other relevant criteria that the application of the grid would yield a finding of no disability.  AT 18-19. Finding, however, that plaintiff's limitations result in significant erosion of the job base upon which the grid is predicated, the ALJ turned to the opinion of the vocational expert who, after having been posed a detailed hypothetical by the ALJ closely approximating the contours of plaintiff's condition and resulting limitations, concluded that there are three

---

positions, including as a security guard, order clerk and information clerk, capable of being performed by the plaintiff and available in sufficient numbers both nationally and in the regional economy, to suit plaintiff's capabilities and work-related limitations.  AT 19-20.  Significantly, although such information is not readily available through the Dictionary of Occupational Titles ("DOT"), the ALJ noted the vocational expert's opinion, based upon his experience, to the effect that each of those positions would permit the requisite sit-stand option required in light of plaintiff's physical limitations.  *Id.*  Based largely upon that testimony, the ALJ concluded that plaintiff was not disabled.  AT 19-20.

The ALJ's opinion became a final determination of the agency when on July 31, 2006, the Social Security Administration Appeal's Council denied plaintiff's request for review of that decision.  AT 3-5.

B.     This Action

Plaintiff commenced this action on September 28, 2006.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of proceedings and evidence before the agency, on January 11, 2007.  Dkt. Nos. 3, 4.  With the filing of plaintiff's brief on February 26, 2007, Dkt. No. 5, and that on behalf of the Commissioner on July 13, 2007, Dkt. No. 10, the matter is now ripe for

11

determination and is before me on consent of the parties, pursuant to 28

U.S.C. § 636(c).[8]  Dkt. No. 9.

III.   DISCUSSION

     A.   Scope of Review

     A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, his decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If,

however, the correct legal standards have been applied and the ALJ's

---

     [8]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464

13

(1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.    <u>Disability Determination - The Five Step Evaluation Process</u>

14

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  Id. §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a

15

severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

     C.    <u>The Evidence In This Case</u>

In support of her challenge to the agency's determination plaintiff makes three arguments, asserting that 1) in formulating his RFC finding, the ALJ improperly discounted the contrary opinion of Dr. Pollack, her treating physician; 2) the ALJ's determination resulted from an improper analysis and unsubstantiated rejection of plaintiff's complaints of disabling pain; and 3) the Commissioner did not carry his burden of proof at step five of the sequential catechism, particularly in view of the fact that the hypothetical posed to the vocational expert did not appropriately define the sit-stand option established as one of plaintiff's RFC limiting factors.  The plaintiff asserts that each of these shortcomings infects the ultimate finding of no disability, and should result in a remand of the matter to the agency with a directed finding of disability.

     1.    <u>Treating Physician</u>

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp. 2d at 316.[9]  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record, including

the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28,

32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the

form of contradictory medical evidence, their resolution is properly

entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

   In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d

---

[9]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.  When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

Plaintiff's treating physician argument is somewhat perplexing.  As the ALJ noted in his decision, his RFC findings draw considerable support from an assessment prepared on January 24, 2006 by plaintiff's physical therapist, Todd Mansfield.  *See* AT 255-60.  Significantly, that RFC assessment was fully endorsed by plaintiff's treating physician, Dr. Pollack who, on March 5, 2006, at the request of plaintiff's counsel noted that "the functional limitations are appropriate for Ms. Gleason."  AT 179.   In that RFC assessment plaintiff's physical therapist noted that she is capable of lifting and carry up to ten pounds; can stand and walk, and sit, for up to a total of four hours in an eight hour work day; cannot climb or crawl, but may occasionally engage in other postural activities like balancing, stooping, crouching and kneeling, and that her ability to reach and

19

push/pull would be affected by her back impairment and low back pain but that her ability to handle objects would not be restricted.  AT 180-82, repeated at AT 255-60.[10]  Since plaintiff's treating physician has endorsed the findings of her physical therapist, this then cannot form the basis for plaintiff's argument in this regard.

Plaintiff may be arguing that the opinions of consultative physician Dr. Diane Paukett, who conducted an examination of the plaintiff on March 29, 2004 and rendered opinions regarding her condition, were improperly elevated over opinions of Dr. Pollack, her treating physician.  There is similarly no basis from the record to conclude, however, that Dr. Paukett offered any assessment contradictory to Dr. Pollack's opinion.  In her report, Dr. Paukett notes the existence of moderate limitations on plaintiff's ability to sit, stand and walk, and moderate to marked limitations on her ability to lift and engage in strenuous activities.  AT 125.  These limitations are entirely consistent with both the observations of Dr. Pollack and the RFC findings of the ALJ.

---

[10]      The D.P.T. designation in Mansfield's title, meaning "Doctor of Physical Therapy", signifies that he holds a post-baccalaureate degree conferred based upon successful completion of a doctoral level professional (entry level) or post professional education program.  *See Website for the American Physical Therapy Association, http://www.APTA/Org.*  This, in combination with the OSC designation, reflects that in addition to being a physical therapist, Mansfield is an orthopedic certified specialist. *See* AT 183.

It may be that in making her treating physician argument, plaintiff is relying upon isolated portions of Dr. Pollack's reports in which he describes her as disabled.  *See, e.g.,* AT 113, 138, 142, 144.  Such opinions, however, are not entitled to special deference even when offered by treating physicians, since they bear upon an ultimate issue specifically reserved for the Commissioner.[11]  20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999).

In short, I am unable to discern any opinions offered by Dr. Pollack, plaintiff's treating physician, which are in conflict with the ALJ's finding in this matter but improperly disregarded in arriving at that conclusion.

>        2.       Plaintiff's Subjective Complaints of Disabling Limitations

Although not pointedly saying as much during her hearing testimony, plaintiff asserts that as a result of the cumulative affects of the symptoms which she experiences, including principally pain, numbness in her hands, and the side affects from her medications, it is impossible for her to perform the requirements associated with any work activity, however modest in its exertional requirements.  The ALJ began his analysis of

---

[11]      It is readily apparent that those opinions were offered in the context of plaintiff's ongoing workers' compensation proceeding.  The disability inquiry for workers' compensation purposes is informed by significantly different considerations than those which apply to the social security disability calculus.  *Gray v. Chater*, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995) (Koetl, J.).

plaintiff's credibility by first observing that plaintiff's "medically
determinable impairments could reasonably be expected to produce the
alleged symptoms, . . .", but went on to conclude that her statements
concerning the "intensity, duration and limited effects of [those] symptoms
are not entirely credible."[12] AT 16 (emphasis in original).  In her challenge
to the Commissioner's determination the plaintiff questions the ALJ's
rejection of these claims as not entirely credible.

An ALJ must take into account subjective complaints of pain in
making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),
416.929(a), (d).  When examining the issue of pain, however, the ALJ is
not required to blindly accept the subjective testimony of a claimant.
*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).
Rather, an ALJ retains the discretion to evaluate a claimant's subjective
testimony, including testimony concerning pain*.  See Mimms v. Heckler,*
750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that
discretion the ALJ must consider a variety of factors which ordinarily would
be relevant on the issue of credibility in any context, including the

---

[12]    In his brief the Commissioner has argued that the objective medical
evidence contained within the record does not reveal the existence of a condition which
could reasonably be expected to produce plaintiff's symptoms to the extent alleged.
*See* Defendants' Brief (Dkt. No. 10) at 8.  This assertion is inconsistent with the ALJ's
finding in this regard.

claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work. *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[13] *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5)

---

[13]   In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her neck and back condition.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

24

Undeniably, the ALJ's discussion regarding credibility and plaintiff's subjective accounts of her symptomology is brief, and does not contain explicit discussion of each of the factors set forth in the guiding regulations.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling 96-7p.  The ALJ did, however, analyze the record and, based upon his perception of plaintiff's circumstances, particularly the sporadic and conservative nature of her course of treatment, indications that her condition has been adequately addressed through prescribed medication, and the extent of her daily activities, concluded that her statements regarding the limiting effects of the pain experienced by her were simply not credible.  *See* AT 16-17.  This analysis draws ample support from the record, which reveals that plaintiff has undergone extremely conservative, and at times sporadic, treatment of her back and neck condition.  The record also reflects the plaintiff's ability to care for her needs, to cook, to vacuum, with breaks, to participate in grocery shopping, to drive a car, to take walks daily, and to mow the lawn using a riding lawn mower.  *See*, *e.g.*, AT 69.

Having carefully reviewed the record in light of the plaintiff's arguments, I conclude the ALJ's finding that plaintiff's complaints of disabling symptomology are not entirely credible is supported by

substantial evidence.

>3.   Step Five Analysis

The last argument raised regarding the Commissioner's finding of no disability concerns the ALJ's analysis of step five of the sequential evaluation process.  Plaintiff asserts that the Commissioner failed to sustain his burden at this point in the analysis, based principally upon the contention that the hypothetical question posed to the vocational expert, whose opinions served as the lynchpin of the finding of no disability, was not supported by substantial evidence in the record.

At the outset of the step five analysis the ALJ first reviewed the grid in order to determine whether a finding on the issue of disability could be directed utilizing it has a framework.  Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy.  *Rosa*, 168 F.3d at 78. Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the

26

particular circumstances involved.  *Bapp*, 802 F.2d at 605.  If a plaintiff's

situation fits well within a particular classification, then resort to the grid is

appropriate.  *Id.*  If, on the other hand, nonexertional impairments,

including pain, <u>significantly</u> limit the range of work permitted by exertional

limitations, then use of the grid is inappropriate, in which case further

evidence and/or testimony is required.[14]  *Rosa*, 168 F.3d at 78; *Bapp*, 802

F.2d at 605-06.

Upon determining that the plaintiff's exertional and non-exertional

limitations eroded the occupational base of jobs suitable for the plaintiff,

given her limitations, to such a degree that resort to the grid as a

framework was not appropriate, the ALJ chose to elicit testimony from a

vocational expert in order to aid in the fifth step analysis.  After posing a

hypothetical question to the vocational expert based upon the ALJ's

findings regarding plaintiff's limitations, *see* AT 310-311, the ALJ asked

whether there are a sufficient number of jobs in the national and local

---

[14]        As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's
> impairments that affect [his or] her ability to meet the
> requirements of jobs other than strength demands, and
> includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. §
404.1569(a), (c)).

27

economies which plaintiff would be capable of performing, notwithstanding

her limitations.  In response, the vocational expert identified three such

positions.

   The focus of plaintiff's challenge to the vocational expert's testimony

centers upon the sit/stand option included within the hypothetical posed,

predicated upon plaintiff's RFC.  Seizing upon statements in SSR 83-12 as

well as the lack of information in the DOT regarding this factor, plaintiff

argues that the vocational expert's opinions do not constitute substantial

evidence supporting the finding of no disability.  It should be noted,

however, that the hypothetical posed to the vocational expert draws the

support of substantial evidence in the record, and therefore was properly

presented.  *See Jerry v. Comm'r of Social Sec.*, No. 05cv1315, 2006 WL

2798790, at *4 (D. Conn. Sept. 28, 2006).  The expert, whose

qualifications the plaintiff does not challenge, testified based upon her

experience that the three positions identified would permit the plaintiff to

sit and stand as necessary, drawing in that regard upon her experience at

having placed individuals in similar positions and job information contained

within a publication relied upon by those within the industry.[15]

---

[15]    In her testimony vocational expert Reed noted her reliance upon the
Employment Statistics Quarterly, a vocational industry publication classifying jobs by
census code and title, current number employed, and DOT title.  *See Klein v. Chater,*

As the Commissioner has noted, Social Security Ruling 96-9p,
addressing "Determining Capability to Do Other Work – Implications of a
Residual Functional Capacity for Less Than a Full Range of Sedentary
Work," recognizes the potential for erosion of the occupational base for a
full range of work when a need to alternate between sitting and standing
cannot be accommodated by scheduled breaks and a lunch period.  *See*
SSR 96-9p.  That ruling explains that

> [t]he extent of the erosion will depend on the facts in the case
> record . . .The RFC assessment must be specific as to the
> frequency of the individual's need to alternate sitting and
> standing.  It may be especially useful in these situations to
> consult a vocational resource to determine whether the
> individual is able to make an adjustment to other work.

*Id.*

In this instance the ALJ followed the procedure prescribed under
SSR 96-9p, as well as SSR 83-12, which specifically provides that an
adjudicator should consult with a vocational expert when an individual is
unable to do either the prolonged sitting contemplated by the definition of
sedentary work or the prolonged standing or walking contemplated for
most light work.  *See* Social Security Ruling 83-12.  Since the ALJ's
ultimate finding in this regard is supported by the vocational expert's

_____

103 F.3d 133, 1996 WL 683748, at *2 (7th Cir. Nov. 22, 1996) (unpublished).

testimony, I find no reason to conclude that the Commissioner did not carry his burden at step five of the sequential analysis or that the finding of no disability is not supported by substantial evidence in the record.

IV.   <u>CONCLUSION</u>

Drawing upon evidence in the record, including the record associated with plaintiff's relatively conservative treatment of her neck and back conditions, the ALJ assigned to address plaintiff's request for Social Security benefits determined that she is capable of performing sedentary work, provided that she is allowed the option of sitting and standing every fifteen to twenty minutes, and subject to additional limitations of a relatively modest nature relating to certain specific work activities.  That RFC determination is fully supported by substantial evidence in the record, including findings of plaintiff's physical therapist and her treating physician, Dr. Pollack.  Applying that RFC to opinions rendered by a vocational expert, the ALJ also properly concluded that plaintiff is capable of performing the work associated with three positions existing in sufficient numbers in the national and local economies to be considered as available work.  While plaintiff complains that the ALJ's finding does not sufficiently accommodate her need to alternate positions due to her neck and back pain, as the Second Circuit has noted, "[t]he regulations do not

mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Based upon the foregoing, and my finding that the Commissioner's determination that plaintiff is not disabled is the product of the application of proper legal principles and is supported by substantial evidence, it is hereby

ORDERED, that defendants' motion for judgment on the pleadings is GRANTED, the Commissioner's determination AFFIRMED, and plaintiff's complaint in this action DISMISSED in all respects; and it is further .

ORDERED that the Clerk of the Court serve a copy of this decision and order upon the parties in accordance with this court's local rules.


Dated:       September 27, 2007
             Syracuse, NY


David E. Peebles
U.S. Magistrate Judge